**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

SPYDERCO, INC., a Colorado corporation,

      Plaintiff,

v.

GERSH BLADES INC., a New York corporation,

      Defendant.

**COMPLAINT WITH JURY DEMAND**

Plaintiff Spyderco, Inc. ("Plaintiff" or "Spyderco") files this Complaint with Jury Demand against Defendant Gersh Blades Inc. ("Defendant" or "Gersh Blades"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## I.      INTRODUCTION

1.      For over four decades, Plaintiff's SPYDERCO word trademark, Spyder Design trademark and particularly, its federally registered three-dimensional trade dress consisting of a circular or round-shaped through hole in knife blade (the "Round Hole Trade Dress"), has defined it as the source of premium quality in the knife industry. In use in commerce on and in connection with its knives and related products since 1981 and registered on the Principal Trademark Register of the U.S. Patent and Trademark Office since 1996 and 1997, respectively, consumers and knife enthusiasts recognize Plaintiff's trademarks, particularly its Round Hole Trade Dress, as the hallmark of

Plaintiff's craftsmanship.  Defendant has without authorization and with the goal of enriching itself, exploited Spyderco's reputation by manufacturing knife blades that copy Plaintiff's iconic round hole design, using that design in the same location as Spyderco on a knife blade.  But that wasn't enough for Defendant, no . . . it then combines these blades with genuine Spyderco knife handles bearing its trademarks.  To then add insult to these injuries, Defendant also installs these blades on genuine handles produced by other OEM manufacturers and bearing their trademarks, creating Frankenstein-esque composite products that deceive both purchasers and the viewing public alike into believing they are authentic products manufactured by Spyderco or the other OEMs.

2.    Defendant markets these products through a website that prominently features Plaintiff's registered SPYDERCO trademark and a photographic gallery of the infringing composite knives, creating a false impression of authorization or partnership with Plaintiff that does not exist. Defendant even encourages Plaintiff's own customers to send their genuine knives for "re-blading" services with Defendant's knife blades, directly undermining Plaintiff's business while trading on Plaintiff's hard-earned goodwill and creating widespread consumer confusion, diverting sales that rightfully belong to Plaintiff, and threatening to irreparably damage the reputation Spyderco has built through decades of quality and innovation. Defendant has no license or authorization to use Plaintiff's trademarks or trade dress, yet continues this willful infringement, wrongfully profiting from Plaintiff's reputation.

3.    Defendant is not authorized or licensed by Plaintiff to manufacture, distribute, offer for sale, or sell products bearing Plaintiff's Round Hole Trade Dress or

other trademarks.  Nor is it authorized to suggest through advertising or otherwise that Defendant is sponsored, licensed by, or affiliated with Plaintiff. Upon information and belief, Defendant's infringement is willful and deliberate.

4.      This is an action for infringement of federally-registered trademarks and trade dress in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for contributory trademark infringement, trade dress infringement, false designation of origin and false association, false advertising, reverse passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for violations of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-105(1)(a), (b), (e), and (g)) and Colorado common law claims for trademark infringement, unfair competition, and unjust enrichment.

## II.    <u>THE PARTIES</u>

5.      Spyderco is a Colorado corporation in good standing, having its principal place of business at 820 Spyderco Way, Golden, Colorado 80403.

6.      Upon information and belief, Gersh Blades is a New York corporation in good standing that owns and operates the online retail store at www.Gershblades.com and Etsy.com.com storefront at www.Etsy.com/shop/GershBlades offering knife blades and knives. Upon information and belief, Gersh Blades can be served through its Registered Agent, The Corporation, at 137 Weed Avenue, Staten Island, New York 10306.

### III.    <u>JURISDICTION AND VENUE</u>

7.    This is an action for infringement of a federally registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)) and for trade dress infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), together with related state law claims. Defendant Gersh Blades has willfully infringed Spyderco's federally registered trademarks, violated the Colorado Consumer Protection Act ("C.C.P.A."), civilly conspired to deprive Spyderco of its legal rights, misappropriated Spyderco's business values and is subject to actual and punitive damages under Colorado Statutory law.

8.    The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over Spyderco's state law claims under 28 U.S.C. § 1367, as they are so related to the federal claims and they form part of the same case or controversy.

9.    This Court has personal jurisdiction over Defendant's 'acts of selling counterfeits of Plaintiff's knife blades and infringing Plaintiff's registered mark that were committed in this district. Also, Defendant Gersh Blades conducts business in the district, advertises infringing and misleading products for sale in the district, and operates an interactive website and Etsy.com storefront that is viewable in this district and from which products can be ordered.  Further, the harm caused by Defendant Gersh Blades' conduct is felt primarily in this district.

10.    Venue over this action is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) as Defendant may be found and/or transacts business in this district and a

4

substantial part of the events giving rise to Plaintiff's claims occurred and are continuing to occur in this district.

## IV.      GENERAL ALLEGATIONS

### A.      Plaintiff and its Federally Registered Trademarks and Trade Dress

11.      Spyderco is engaged in the business of, among other things, designing, developing, manufacturing, and distributing knives and knife accessories in interstate commerce under the federally registered Round Hole Trade Dress and federally registered SPYDERCO word and Spyder design trademarks. Many of these products are manufactured at Spyderco's Golden, Colorado facility, and all its business operations occur out of that facility. Spyderco and its products are recognized by the knife industry as being among the very best in quality and distinctiveness in the world. (***See* Exhibit A,** a true and correct copy of which is incorporated herein by this reference.) Spyderco's business and product reputation are among its most prized business assets. Since 1981, well prior to the acts complained of herein, Spyderco has sold its products nationwide via its physical retail and on-line retail stores and through authorized distributors worldwide at their respective physical and online retail stores and continues to do so today. It has extensively advertised its knives in its social media accounts, several popular national magazines, at tradeshows and in other customary ways.

12.      Spyderco owns, amongst numerous other trademarks, the following relevant U.S. federal trademark registrations that are registered on the Principal Register of the United States Patent and Trademark Office:

5

| Trademark | U.S. Reg. No. | Goods & Services | Reg. Date |
|---|---|---|---|
| Round Hole Trade Dress "The mark consists of the configuration of a portion of the goods, namely a circular through hole formed in the body of a knife blade." | 2,033,317 | Class 008: Knives, namely hunting, fishing, pocket, folding and sporting knives | January 28, 1997 |
| SPYDERCO | 1,965,458 | Class 008: knives, namely hunting, fishing, pocket, folding and sporting knives; sharpening stones | April 2, 1996 |
| Spider Design Mark | 1,957,810 | Class 008: knives, namely hunting, fishing, pocket, folding and sporting knives; sharpening stones | February 20, 1996 |

True and correct copies of these registrations are attached **as Exhibits B, C, and D** and are incorporated herein by this reference.

13.    Plaintiff's trademark registrations are valid, subsisting, incontestable under 15 U.S.C. § 1065, and in full force and effect.

14.     While trade dress is not explicitly defined in the Lanham Act, it is considered a "symbol" or "device" and, therefore, falls within the definition of a trademark or service mark. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000); *see also* 15 U.S.C. §§ 1127 and 1125(a).   Registration on the Principal Register creates a rebuttable presumption of the validity of the marks, Plaintiff's ownership, Plaintiff's exclusive right to use the mark, of its distinctiveness or acquired distinctiveness to relevant consumers and others, and of non-functionality. *See* 15 U.S.C. § 1115(a).

15.     Plaintiff's federally registered three-dimensional Round Hole Trade Dress is defined as "a circular through hole formed in the body of a knife blade" and which is located specifically closer to the top of blade and towards the hilt or handle of the knife. The mark has been federally registered on the Principal Register of the United States since 1997 and is incontestable.

16.     Many of Plaintiff's knives contain the Round Hole Trade Dress feature, which can be seen on the blade of Spyderco pocketknives even when the bladed is folded into the knife handle.   As supported by its federal trademark registration, this design feature is nonfunctional, the select size, location, placement and shape of the design not being critical to aesthetic or operational functionality, and it has attained secondary meaning among relevant consumers and industry (e.g., consumers of folding and fixed blade knives and the folding and fixed blade knife industry). **See Exhibit E** containing photographs of Plaintiff's knives folded showing the Round Hole Trade Dress as they are sold via its online retail website Spyderco.com, true and correct copies of which are incorporated herein by this reference.

7

17.     Plaintiff's knives also include the SPYDERCO word trademark and the Spyder or "bug" Design trademark shown in the table above.  These too can be found in numerous places on the SPYDERCO knives, including on the blade, the blade handle, and on the pocket clip on a folding blade knife.  **See Exhibit F** for photographs of Plaintiff's knives showing these trademarks as they are sold via its online retail website Spyderco.com, true and correct copies of which are incorporated herein by this reference.

18.     Since at least 1981, the Round Hole Trade Dress has been used continuously in commerce in connection with Plaintiff's hunting and sporting knives, this more than 44 years of extensive use and related advertising resulting in the Round Hole Trade Dress having acquired distinctiveness and secondary meaning.

19.     As a result, the Round Hole Trade Dress is recognized by consumers and throughout the knife industry as a distinctive source identifier uniquely associated solely with Plaintiff's knives, with consumers even referring to it as the "Spydie Hole," in reference to Spyderco. **See Exhibit G**, examples of consumer recognition of the Round Hole Design Trade Dress as identifying Plaintiff's knives and referencing the "Spydie Hole," true and correct copies of which are incorporated herein by this reference.

20.     The SPYDERCO Word and Spyder Design Marks have similarly been used continuously since at least 1981 and have acquired substantial goodwill.

21.     Plaintiff maintains strict quality control standards for all its knives. **See Exhibit H**, Spyderco product warranty and steel composition chart and article from TrueShot.com regarding Spyderco quality control, true and correct copies of which are incorporated herein by this reference.

**B.     Defendant's Copying of Plaintiff's Trade Dress**

22.     Upon information and belief, beginning on or around 2017 Defendant Gersh Blades began making his own custom-made "Gersh" brand knives "from scratch" and offering them for sale on his Etsy.com store front at Etsy.com/shop/GershBlades.  These knives were comprised of knife blades and knife handles allegedly made by Defendant. **See Exhibit I**, a screenshot from Etsy.com/shop/GershBlades showing store creation date, a true and correct copy of which is incorporated herein by this reference.

23.     Upon information and belief, on or around 2020-2021, Defendant Gersh Blades began offering the same custom-made "Gersh" brand knives for sale at the website GershBlades.com. **See Exhibit J**, screenshot from archive.org showing archived website pages from GershBlades.com from April 24, 2021 showing a website copyright creation date of 2019 through Wix.com, a true and correct copy of which is incorporated herein by this reference.

24.     Upon information and belief, beginning on or around February or March 2023, in addition to making its own custom knives from scratch, Defendant Gersh Blades began to also make and offer for sale, "replacement" knife blades for knives produced by Spyderco and other manufacturers.  **See Exhibit K**, screenshot of 2023 search for "re-blade" from Gersh Blades Facebook account at https://www.facebook.com/people/Gersh-Blades/100057873712478/ showing the knives with replacement "re-blade" knife blades for sale with dates, including February 4, 2023 post showing "re-blade" using Spyderco Round Hole Trade Dress with third-party

Benchmade®[1] brand knife handle, a true and correct copy of which is incorporated herein by this reference.

25.    Upon information and belief, since at least as early February 2023 and continuing to the present, Defendant has manufactured and sold knife blades that incorporate a round through hole design feature identical to or substantially indistinguishable from Plaintiff's federally registered Round Hole Trade Dress as used on knife blades.

26.    Defendant's knife blades also bear Defendant's own two-dimensional trademark "GersH."    *See* **Exhibit L**, screenshot of product photo from Defendant's Gershblades.com website, a true and correct copy of which is incorporated herein by this reference.

27.    At no time has Defendant had any license, authorization, or permission from Plaintiff to use, reproduce, or copy the Round Hole Trade Dress on knife blades.

28.    Upon information and belief, Defendant intentionally copied Plaintiff's Round Hole Trade Dress with full knowledge of Plaintiff's trademark rights and federal registration, which has been a matter of public record since 1997.

29.    Upon information and belief, Defendant selected and adopted the round hole design feature for its knife blades specifically because of the recognition, goodwill, and commercial value associated with Plaintiff's Round Hole Trade Dress and specifically

---

[1] "BENCHMADE", the Butterfly Outline Design "🦋", and "GRIPTILIAN" trademarks referenced in this Complaint are registered trademarks of Benchmade Knife Co., Inc.

to replace Plaintiff's produced knife blades that come preinstalled on Spyderco knives and competes directly with Spyderco for product sales.

30.    On or about February 2024, Plaintiff first became aware of Defendant's infringing conduct after corresponding with Defendant on an online forum regarding Defendant's intended use of Plaintiff's Round Hole Trade Dress. During that correspondence, Defendant was expressly advised that any such use would require a license from Plaintiff. Notwithstanding this notice, Defendant moved forward with the unauthorized use of Plaintiff's mark. On or about July 2025, Plaintiff learned that Defendant was operating a website and an Etsy storefront offering goods bearing Plaintiff's Round Hole Trade Dress after a customer of Plaintiff brought these online postings to Plaintiff's attention.

**C.    Defendant's Creation of Unauthorized Composite Products**

31.    Upon information and belief, since at least as early as February 2023 and continuing to the present, Defendant Gersh Blades has offered and provided custom knife assembly services whereby Defendant combines its infringing knife blades with knife handles manufactured by Plaintiff and other OEMs knives. **See Exhibit K,** *supra*, showing a "custom" made knife by Defendant with "re-blade" using Plaintiff's Round Hole Trade Dress on original Benchmade brand handle, and *see* **Exhibit M** for screenshot of customer order page on Gershblade.com for replace "re-blade" for Spyderco Delica brand knife and screenshot from Defendant's Facebook page advertising a custom "re-blade" for a Benchmade Griptilian and MiniGriptilian brand knives with GersH branded blades

11

using the Round Hole Tade Dress a true and correct copy of which is incorporated herein by this reference.

32.     Upon information and belief, since at least February 2023 Defendant Gersh Blades has assembled and sold complete knives, consisting of:

a.     Defendant's knife blades bearing the infringing Round Hole Trade Dress feature in the same place on the knife blade, combined with genuine knife handles manufactured by Plaintiff and bearing Plaintiff's Word and Design Marks; and/or

b.     Defendant's knife blades bearing the copied Round Hole Trade Dress combined with genuine knife handles manufactured by third-party OEMs and bearing those manufacturers' trademarks. **See Exhibits K and M,** *supra***.**

33.     These composite custom knives bear multiple manufacturers' trademarks in combinations that have never been authorized by Plaintiff and, upon information and belief, have not been authorized by the other OEMs whose handles are used such as the screenshots shown below from the "Benchmade Gallery" website showing the front of a "custom" knife with the knife blade labeled with "GersH" but also showing the Spyderco Round Hole Trade Dress and the second photo showing the "back" of the custom knife showing the Benchmade Butterfly Outline trademark on the pocket clip and the same Spyderco Round Hole Trade Dress from the back.



https://www.gershblades.com/benchmade-gallery?lightbox=dataItem-mc6ztdwd2

https://www.gershblades.com/benchmade-gallery?lightbox=dataItem-mc6ztdwd3

*See* **Exhibit N** for complete screenshots shown above as well as a screenshot from Defendant's Reddit account showing a photo of a custom "re-blade" with Benchmark brand showing on the pocket clip of the knife blade and the "re-blade" showing the Spyderco Round Hole Trade Dress, a true and correct copy of which is incorporated herein by this reference.

34.    The resulting composite knife products create the false impression that they are genuine products manufactured by Plaintiff or the other OEMs, are products authorized or sponsored by Plaintiff or the other OEMs, are products resulting from

legitimate collaborations between manufacturers, or are products that meet the quality standards associated with Plaintiff's and other OEMs' brands.  None of these impressions are true and all have been created by Defendant for its pecuniary gains.

**D.     Defendant's Infringing and Misleading Use of Plaintiff's Trademarks**

35.     Upon information and belief, sometime between December 10, 2023 and April 12. 2024, and continuing through the present, Defendant's Gershblades.com website has included a tab or section titled "Spyderco Gallery" that incorporates and prominently displays Plaintiff's federally registered SPYDERCO Word Mark. *See Exhibit O* showing screenshots from Archive.org showing archived website page of Gershblades.com in December without "Spyderco Gallery" tab and archived website page from Gershblades.com in April with "Spyderco Gallery" tab, a true and correct copy of which is incorporated herein by this reference.

36.     Since at least as early as April 2024, the "Spyderco Gallery" on Defendant's Gershblades.com website has displayed numerous photographs showing knife products consisting of Defendant's knife blades (bearing the copied Round Hole Trade Dress and Defendant's own mark) installed in genuine knife handles manufactured by Plaintiff (bearing Plaintiff's Word and Design Marks). *See Exhibit P*, screenshot of entire "Spyderco Gallery" from GershBlades.com at https://www.gershblades.com/spyderco-gallery, a true and correct copy of which is incorporated herein by this reference.

37.     The photographs in the "Spyderco Gallery" depict complete knife products that appear to be genuine Plaintiff products or products resulting from an authorized

14

relationship between Plaintiff and Defendant.  They are not authentic and there is no such authorized relationship.

38.     Upon information and belief, the photos in the Spyderco Gallery on the Gershblades.com website are also used by Defendant Gersh Blades on its Etsy.com storefront and various social media accounts and product forums, including Facebook at https://www.facebook.com/people/Gersh-Blades/100057873712478/#,     Instagram     at https://www.instagram.com/gershblades/,                    Reddit                    at https://www.reddit.com/user/GershBlades/,              TikTok              at https://www.tiktok.com/@gershblades,          and          Bladeforums.com          at https://www.bladeforums.com/members/gershblades.629584/.     **See Exhibit Q** for screenshots of each of these account pages, true and correct copies of which are incorporated herein by this reference.

39.     As of December 18, 2025 the "Spyderco Gallery" contains minimal or no disclaimers informing consumers that: (a) the knives depicted are not genuine Plaintiff products; (b) the blades are manufactured by Defendant, not Plaintiff; (c) the products are unauthorized composite products; or (d) Plaintiff has no relationship with or endorsement of Defendant.

40.     Upon information and belief, Defendant's use of the photos on the Spyderco Gallery and on its various social media and product forums identifies, in some instances, the photographed knives as "re-blades," along with the Spyderco mark and the Plaintiff's registered trademark for a specific model of knife.     **See Exhibit R** for examples of

15

screenshots from Defendant's website and social media account pages, true and correct copies of which are incorporated herein by this reference.

41.     Upon information and belief, Defendant created the "Spyderco Gallery" sometime between December 10, 2023 and April 12, 2024 and has maintained and updated it for the purpose of attracting consumers searching for Plaintiff's products and diverting those consumers to purchase Defendant's infringing products and services.

**E.     Defendant's "Re-blade" Marketing**

42.     Upon information and belief, since at least as early as March 2023 and continuing to the present, Defendant has advertised its products and knife-making services using terms such as "re-blade" or substantially similar language. ***See* Exhibit S** for screenshots of use of "re-blade" on Defendant's Etsy.com storefront and Facebook page, true and correct copies of which are incorporated herein by this reference.

43.     The term "re-blade" as used by Defendant refers to Defendant's practice of replacing the original blade in a complete third-party OEM knife with Defendant's blade.

44.     Since at least March 2023, Defendant's use of the term "re-blade" has been directed at consumers who own knives manufactured by Plaintiff and other OEMs, encouraging them to purchase a blade replacement from Defendant.

45.     Defendant's use of the term "re-blade" creates the impression that Defendant provides a blade replacement service authorized or approved by Plaintiff and other OEMs, that the resulting composite knives maintain the quality and authenticity associated with the original manufacturers, and that consumers will receive genuine or authorized replacement parts.

46.    In fact, Defendant's provision of "re-blade" products and services sometimes resulted in "Frankenstein" composite knife products consisting of one of Defendant's knife blades bearing the Plaintiff's Round Hole Trade Dress on a different OEM's knife handle, confusing consumers with an unauthorized combination composite knife, some showing three different trademarks and confusing consumers as to source or origin of the knives or who sponsors them.  **See Exhibit N**, *supra*, for examples.

**F.    Defendant's Misleading 100% Custom Made Representations**

47.    Upon information and belief, since at least as early as 2022 and continuing to the present, Defendant has represented in its advertising and marketing that its knives are "100% custom made" or has used substantially similar language suggesting that <u>all</u> of Defendant's knife products shown on the Geshblades.com website, Defendant's Etsy.com storefront, and Defendant's various social media and product form accounts are manufactured solely and completely by Defendant. **See Exhibit T** for relevant screenshots, true and correct copies of which are incorporated herein by this reference.

48.    Upon information and belief, Defendant has not changed this marketing statement regarding its knives being 100% custom-made even after it began making and offering knife blades copying Plaintiff's Round Hole Trade Dress and offering custom "re-blade" services and creating composite knives consisting of blades made by Defendant and existing OEM knife handles and continues to use it in new marketing materials.  **See Exhibit U**, showing statements on Defendant's website and social media accounts from 2025 using same or similar language, true and correct copies of which are incorporated herein by this reference.

49.    These representations are literally false with respect to Defendant's "re-blade" products and its Frankenstein-esque, unauthorized, multi-brand composite knives. Upon information and belief, Defendant does not manufacture all components of many of the knives shown on the Gershblades.com website, Defendant's etsy.com storefront and related social media pages, but rather uses genuine handles manufactured by Plaintiff and other OEMs.

50.    Defendant's "100% custom made" representations are material to consumers' purchasing decisions because consumers value and are willing to pay premium prices for knives that are entirely manufactured by a single maker.

51.    Since at least 2022, Defendant's false representations have deceived consumers about: (a) the origin and source of some of the knife components Defendant provides; (b) the extent of Defendant's manufacturing and craftsmanship of all knives shown on Gershblades.com, Defendant's Etsy.com storefront and related social media accounts; (c) whether the knife is a genuine product of a single manufacturer or an assembled composite product; and (d) the value and authenticity of the product.

**G.    Resulting Likelihood of Confusion**

52.    Since at least February 2023, Defendant's unauthorized use of the Round Hole Trade Dress and Plaintiff's SPYDERCO Word and Spyder Design trademarks has created and continues to create confusion, mistake, or deception among consumers as to the source, origin, sponsorship, affiliation, or endorsement of Defendant's products.

53.    The confusion is purposely created and established by multiple factors: (a) Plaintiff's Round Hole Trade Dress and SPYDERCO Word and Spyder Design marks are

distinctive and federally registered since 1997 and 1996, respectively; (b) Defendant's round hole is identical or virtually identical to Plaintiff's registered trade dress and used in the same location on the knife blade; (c) both parties sell knife blades and knives for hunting and sporting purposes to the same consumers through the same channels; (e) Defendant copied Plaintiff's trade dress and uses Plaintiff's marks to trade on Plaintiff's reputation; (f) many consumers are not experts and are likely to be confused by the identical trade dress and mixed branding; (g) Defendant benefits from initial interest confusion by attracting consumers searching for Plaintiff's products; and (h) confusion is heightened by Defendant's composite knives combining infringing blades with genuine handles bearing Plaintiff's and other manufacturers' trademarks.

## H.    Resulting Post-Sale Confusion

54.    Since at least February 2023, Defendant's conduct has created and continues to create substantial likelihood of post-sale confusion.

55.    Because Plaintiff's Round Hole Trade Dress is prominently visible on knife blades and serves as a key source identifying feature, third parties viewing Defendant's knife blades and knives in use, on display, or offered for resale are likely to believe they are genuine SPYDERCO products.

56.    Post-sale confusion is particularly likely in the knife market because: (a) knives are often displayed, carried, or used in public settings; (b) knives are frequently bought, sold, and traded in secondary markets where authenticity is important; (c) knife collectors place significant value on authentic products; and (d) the Round Hole Trade Dress has been a prominent and recognizable feature in use by Plaintiff since 1981.

57.     Upon information and belief, since at least February 2023, post-sale confusion has occurred when third parties have viewed Defendant's products and mistakenly believed them to be genuine Plaintiff products or that they are licensed or authorized by, made in partnership and co-branded with or otherwise affiliated with Plaintiff.

58.     Post-sale confusion harms Plaintiff by: (a) diluting the strength of Plaintiff's trade dress and word and design trademarks; (b) damaging Plaintiff's reputation if inferior infringing products are mistaken for Plaintiff's; (c) reducing the exclusivity and premium value of Plaintiff's products; and (d) facilitating fraud in secondary markets.

I.     **Harm to Plaintiff**

59.     Since at least February 2023, and continuing to the present, Defendant's infringing conduct has caused and continues to cause substantial harm to Plaintiff, including:

a.     Lost sales and profits as consumers purchase Defendant's infringing products instead of Plaintiff's genuine products;

b.     Loss of control over the quality of products bearing Plaintiff's trade dress;

c.     Expenditure of substantial resources to investigate, monitor, and enforce Plaintiff's trademark rights;

d.     Unfair competition from Defendant's unauthorized use of Plaintiff's distinctive trade dress and marks; and

e.    Irreparable injury to Plaintiff's business, reputation, and trademark rights that cannot be fully compensated by monetary damages alone.

f.    Upon information and belief, since at least February 2023, Defendant has realized profits and unjust enrichment from its infringing conduct.

g.    Unless enjoined by this Court, Defendant will continue to counterfeit and infringe Plaintiff's trademark rights, causing continuing and irreparable harm to Plaintiff.

**J.    Contributory Trademark Infringement Though Sale of Separate Blades**

60.    Upon information and belief, since at least February 2023, Defendant has sold knife blades bearing the copied Round Hole Trade Dress as separate components (not pre-installed in handles) directly to customers. ***See, for example*, Exhibits K and M**, *supra*.

61.    Upon information and belief, customers purchase these separate blades and install them in genuine knife handles manufactured by Plaintiff that bear Plaintiff's federally registered trademarks, thereby creating composite knife products that bear Plaintiff's trademarks on the handles in unauthorized combination with Defendant's copied Round Hole Trade Dress feature on the blades.

62.    When customers use these composite knife products in commerce by displaying them publicly, carrying them, posting photographs on social media and knife forums, and offering them for sale or trade in secondary markets, such use constitutes direct infringement of Plaintiff's trademark rights because the composite products bear

21

Plaintiff's trademarks in unauthorized combinations likely to cause confusion as to source, sponsorship, or affiliation.

63.    Upon information and belief, since at least February 2023, Defendant has intentionally induced customers to create such composite infringing products by: (a) designing and selling blades with mounting configurations specifically to fit Plaintiff's trademarked handles; (b) displaying composite products in the Spyderco Gallery as examples showing customers the intended result; (c) marketing "re-blade" products and services that encourage blade replacement; (d) marketing compatibility with Plaintiff's handles; and (e) featuring customer-created composite products.

64.    Upon information and belief, since at least February 2023, Defendant has had actual knowledge that customers are purchasing Defendant's separate blades to install in Plaintiff's trademarked handles and create composite infringing products, as demonstrated by: (a) the Spyderco Gallery displaying such composite products; (b) customer communications regarding compatibility with Plaintiff's handles and "re-blade" services; and (c) Defendant's marketing emphasizing compatibility with Plaintiff's products. ***See Exhibit V***, screenshots of comments posted on Defendant's Reddit account showing knowledge of Plaintiff's trade dress, true and correct copies of which are incorporated herein by this reference.

65.    Despite such knowledge, from February 2023 to the present, Defendant has continued to supply separate blades to customers and actively promote their use in combinations with Plaintiff's trademarked handles through continued operation of the Gallery, continued "re-blade" marketing, and continued emphasis on compatibility.

## V.     FIRST CLAIM FOR RELIEF
### Trademark Infringement
### (15 U.S.C. § 1114(1) - Lanham Act § 32(1))

66.     Plaintiff incorporates paragraphs 1-65 as though fully set forth herein.

67.     Upon information and belief, since at least February 2023, Defendant has used in commerce reproductions and copies of Plaintiff's registered Round Hole Trade Dress and Plaintiff's SPYDERCO word mark and Spyder Design mark without authorization in connection with selling knife blades and "custom" knives.

68.     Defendant's round hole as used on knife blades is identical or substantially indistinguishable from Plaintiff's registered Round Hole Trade Dress and is used in substantially the same size and in the same location on the knife blade, and Defendant has used Plaintiff's SPYDERCO word mark in the "Spyderco Gallery" tab on its website.

69.     Since at least February 2023, this unauthorized use has been and continues to be likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, affiliation, or endorsement of Defendant's goods.

70.     This constitutes trademark infringement in violation of 15 U.S.C. § 1114(1).

71.     Upon information and belief, Defendant's infringement is willful and deliberate.

72.     As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

23

73.    Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages (up to 3x) pursuant to 15 U.S.C. § 1117(a), costs, and attorneys' fees.

74.    Upon information and belief, since at least February 2023, Defendant has also used Plaintiff's federally registered word and design marks in commerce by selling composite products consisting of Defendant's infringing blades installed in genuine Plaintiff handles that bear Plaintiff's marks.

75.    Defendant's sale of these composite products constitutes unauthorized use of Plaintiff's marks in commerce because: (a) the composite products are not genuine Plaintiff products; (b) Defendant has materially altered the products by removing Plaintiff's genuine blades and replacing them with Defendant's infringing blades; (c) the composite products bear Plaintiff's marks but do not meet Plaintiff's quality standards or specifications; and (d) Defendant's use creates likelihood of confusion as to whether the composite products are genuine Plaintiff products or are authorized or sponsored by Plaintiff.

76.    Defendant's material alteration of genuine Plaintiff handles by replacing Plaintiff's blades with Defendant's blades destroys any first sale defense and constitutes unauthorized use of Plaintiff's marks in violation of 15 U.S.C. § 1114(1).

77.    Plaintiff requests judgment on the First Claim and all relief in the Prayer for Relief.

24

## VI.    SECONDCLAIM FOR RELIEF
### Trademark Infringement Through Material Alteration
### Of Plaintiff's Genuine Product
### (15 U.S.C. §§ 1114(1) and 1125(a))

78.    Plaintiff incorporates paragraphs 1-77 as though fully set forth herein.

79.    Upon information and belief, since at least February 2023, Defendant has obtained knife handles which may have been manufactured by Plaintiff bearing Plaintiff's federally registered SPYDERCO word mark and Spyder design mark, removed Plaintiff's genuine blades, if included, installed Defendant's infringing blades bearing the copied Round Hole Trade Dress, and advertised, offered for sale, and/or sold these materially altered composite products in commerce while they continue to bear Plaintiff's marks.

80.    Defendant's replacement of Plaintiff's blades with Defendant's blades constitutes material alteration because the blade is the primary functional component and Defendant's blades differ in materials, construction, quality, and performance. The composite products are not genuine Plaintiff products and are not manufactured or authorized by Plaintiff.

81.    Defendant's sale of materially altered products bearing Plaintiff's federally registered trademarks and trade dress constitutes unauthorized use in commerce likely to cause confusion as to whether the products are genuine Plaintiff products or are authorized, sponsored, or approved by Plaintiff.

82.    Defendant's conduct also creates post-sale confusion when the public views composite products bearing Plaintiff's marks and copied trade dress and mistakenly believes they are genuine Plaintiff products, potentially damaging Plaintiff's reputation and diluting the strength of Defendant's trademarks, trade dress, and business reputation.

83.    Material alteration destroys any first sale doctrine defense. Defendant has no authorization to use Plaintiff's marks on altered products.

84.    Upon information and belief, Defendant's infringement is willful and deliberate.

85.    As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, lost profits, loss of control over products bearing Plaintiff's marks, damage to reputation and goodwill, and irreparable injury.

86.    Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages (up to 3x) pursuant to 15 U.S.C. § 1117(a), costs, and attorneys' fees.

87.    Plaintiff requests judgment on the Second Claim and all relief in the Prayer for Relief.

## VII.    THIRD CLAIM FOR RELIEF
### Contributory Trademark Infringement
### (15 U.S.C. § 1114(1))

88.    Plaintiff incorporates paragraphs 1-87 as though fully set forth herein.

89.    Upon information and belief, Defendant's customers have purchased Defendant's knife blades bearing the copied Round Hole Trade Dress and combined them with genuine handles bearing Plaintiff's trademarks, and these customers use such composite products in commerce in ways that constitute direct infringement of Plaintiff's trademark rights.

90.    Upon information and belief, since at least February 2023, Defendant has intentionally induced customer infringement by: (a) supplying blades specifically designed

26

for combination with genuine trademarked handles; (b) displaying composite products in the Spyderco Gallery as examples and instructions; (c) marketing "re-blade" products and services; (d) offering custom assembly services that create composite products; and (e) otherwise encouraging and facilitating creation of composite infringing products.

91.     Upon information and belief, since at least February 2023, Defendant has had actual knowledge that its blades are being used by customers to create composite products that infringe Plaintiff's trademark rights, as demonstrated by the Spyderco Gallery, customer communications, and Defendant's "re-blade" services.

92.     Despite such knowledge, from February 2023, to the present, Defendant has continued to supply infringing blades and actively promote their use through continued operation of the Gallery, continued "re-blade" services, and continued marketing of compatibility with Plaintiff's handles.

93.     This constitutes contributory trademark infringement under 15 U.S.C. §1114(1) and *Inwood Laboratories, Inc. fdfd v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982).

94.     Upon information and belief, Defendant's contributory infringement is willful and deliberate.

95.     As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

96.     Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1117.

27

97.    Plaintiff requests judgment on the Third Claim and all relief in the Prayer for Relief.

## VIII.    <u>FOURTH CLAIM FOR RELIEF</u>
**Trade Dress Infringement**
**(15 U.S.C. § 1125(a)(1)(A) - Lanham Act § 43(a))**

98.    Plaintiff incorporates paragraphs 1-97 as though fully set forth herein.

99.    Upon information and belief, since at least February 2023, Defendant has used in commerce a round hole design identical or substantially indistinguishable from Plaintiff's federally registered Round Hole Trade Dress on the top portion of and closer to the handle of knife blades.

100.    Since at least February 2023, Defendant's use has been and continues to be likely to cause confusion, mistake, or deception among consumers as to the origin, source, sponsorship, affiliation, or endorsement of Defendant's products.

101.    This constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a)(1)(A).

102.    Upon information and belief, Defendant's trade dress infringement is willful and deliberate.

103.    As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

104.    Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages (up to 3x) pursuant to 15 U.S.C. § 1117(a), costs, and attorneys' fees.

105.    Plaintiff requests judgment on the Fourth Claim and all relief in the Prayer for Relief.

## VIII.    FIFTH CLAIM FOR RELIEF
### FALSE DESIGNATION OF ORIGIN AND FALSE ASSOCIATION
### (15 U.S.C. § 1125(a)(1)(A) - Lanham Act § 43(a))

106.    Plaintiff incorporates paragraphs 1-105 as though fully set forth herein.

107.    Upon information and belief, since at least February 2023, Defendant has used Plaintiff's federally-registered trademarks and trade dress in commerce in ways likely to cause confusion as to affiliation, connection, association, origin, sponsorship, or approval by Plaintiff, including by: (a) using Plaintiff's SPYDERCO word mark in the "Spyderco Gallery" title; (b) displaying composite products in the Gallery; (c) marketing "re-blade" services; (d) copying the Round Hole Trade Dress as used on knife blades; and (e) creating, selling, and distributing composite products consisting of Defendant's infringing blades installed in genuine Plaintiff handles that bear Plaintiff's federally registered word and design marks, thereby using Plaintiff's marks in commerce in connection with materially altered products that are not genuine Plaintiff products and that do not meet Plaintiff's quality standards; and (f) creating composite products bearing multiple manufacturers' marks in unauthorized combinations.

108.    Since at least February 2023, this conduct has created and continues to create initial interest confusion, point-of-sale confusion, and post-sale confusion.

109.    This constitutes false designation of origin and false association in violation of 15 U.S.C. § 1125(a)(1)(A).

29

110. Upon information and belief, Defendant's conduct is willful, deliberate, and in bad faith.

111. As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

112. Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages (up to 3x) pursuant to 15 U.S.C. § 1117(a), costs, and attorneys' fees.

113. Plaintiff requests judgment on the Fifth Claim and all relief in the Prayer for Relief.

## IX. SIXTH CLAIM FOR RELIEF
### False Advertising
### (15 U.S.C. § 1125(a)(1)(B) - Lanham Act § 43(a))

114. Plaintiff incorporates paragraphs 1-113 as though fully set forth herein.

115. Upon information and belief, since at least February 2024, Defendant has made false and misleading statements in commercial advertising concerning the nature, characteristics, and origin of its goods, including representing knives as "100% custom made" and made "from scratch" when they incorporate genuine OEM handles manufactured by Plaintiff and others.

116. The "100% custom made" and "from scratch" representations are literally false as Defendant does not manufacture all components but uses genuine handles manufactured by Plaintiff and other OEMs.

117.    These statements are material to consumers' purchasing decisions and are made in commercial advertising on Defendant's website, Etsy storefront, and on social media accounts and product forums.

118.    As a direct competitor, Plaintiff is damaged by Defendant's false advertising, which has caused competitive injury through diverted sales, consumer deception, marketplace confusion, and damage to Plaintiff's goodwill and reputation.

119.    This constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

120.    Upon information and belief, Defendant's false advertising is willful and deliberate.

121.    As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

122.    Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages (up to 3x) pursuant to 15 U.S.C. § 1117(a), costs, and attorneys' fees.

123.    Plaintiff requests judgment on the Sixth Claim and all relief in the Prayer for Relief.

## X.    SEVENTH CLAIM FOR RELIEF
### Reverse Passing Off
### (15 U.S.C. § 1125(a) - Lanham Act § 43(a))

124.    Plaintiff incorporates paragraphs 1-123 as though fully set forth herein.

125.    Upon information and belief, since at least February 2023, Defendant has obtained genuine knife handles manufactured by Plaintiff, combined them with

31

Defendant's blades, and represented these composites as "100% custom made" by Defendant without disclosing that handles are manufactured by Plaintiff.

126. By these representations, Defendant removes, obscures, or fails to acknowledge the origin of Plaintiff's genuine components, passing off Plaintiff's goods as Defendant's own.

127. This constitutes reverse passing off in violation of 15 U.S.C. § 1125(a).

128. Upon information and belief, Defendant's reverse passing off is willful and deliberate.

129. As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost recognition for its products, damage to reputation, and irreparable injury.

130. Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

131. Plaintiff requests judgment on the Seventh Claim and all relief in the Prayer for Relief.

### XI.    EIGHTH CLAIM FOR RELIEF
**Unfair Competition**
**(15 U.S.C. § 1125(a) - Lanham Act § 43(a))**

132. Plaintiff incorporates paragraphs 1-131 as though fully set forth herein.

133. Upon information and belief, since at least February 2023, Defendant has engaged in unfair competition by: (a) copying Plaintiff's federally registered Round Hole Trade Dress; (b) using Plaintiff's trademarks in advertising without authorization; (c) creating composite products falsely suggesting authorization; (d) making false

representations about the nature and origin of its products; (e) engaging in deceptive trade practices; (f) trading on Plaintiff's brand recognition; and (g) creating marketplace confusion.

134.    This conduct gives Defendant an unfair competitive advantage and violates accepted standards of business ethics.

135.    Upon information and belief, Defendant's unfair competition is willful, deliberate, and in bad faith.

136.    As a direct and proximate result, Plaintiff has suffered and continues to suffer substantial damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

137.    Plaintiff is entitled to injunctive relief, Defendant's profits, actual damages, enhanced damages (up to 3x) pursuant to 15 U.S.C. § 1117(a), costs, and attorneys' fees.

138.    Plaintiff requests judgment on the Eighth Claim and all relief in the Prayer for Relief.

## XII.    NINTH CLAIM FOR RELIEF
### Violation of Colorado Consumer Protection Act – Passing Off
### (Colo. Rev. Stat. § 6-1-105(1)(a))

139.    Plaintiff incorporates paragraphs 1-138 as though fully set forth herein.

140.    Upon information and belief, since at least February 2023, Defendant has passed off its goods as those of Plaintiff by: (a) selling blades bearing a round hole identical or substantially indistinguishable from Plaintiff's registered Round Hole Trade Dress, in substantially the same size, and placed in substantially the same location on

the knife blade; (b) creating composite knives combining Defendant's blades with genuine Plaintiff handles; (c) displaying composite products in the Spyderco Gallery on the Gershblades.com website and on its social media and product forum accounts pages; and (d) marketing products in a manner likely to cause consumers to believe they are Plaintiff's products.

141.    This violates Colo. Rev. Stat. § 6-1-105(1)(a).

142.    Upon information and belief, Defendant's violations are knowing and willful.

143.    Plaintiff has standing under Colo. Rev. Stat. § 6-1-113 and has suffered actual damages, including lost sales, lost profits, and damage to reputation and goodwill.

144.    Plaintiff is entitled to injunctive relief under § 6-1-110, actual damages, treble damages for knowing and willful violations under § 6-1-113, costs, and attorneys' fees.

145.    Plaintiff requests judgment on the Ninth Claim and all relief in the Prayer for Relief.

### XIII.    TENTH CLAIM FOR RELIEF
**Violation of Colorado Consumer Protection Act – Confusion as to Source**
**(Colo. Rev. Stat. § 6-1-105(1)(b))**

146.    Plaintiff incorporates paragraphs 1-145 as though fully set forth herein.

147.    Since at least February 2023, Defendant has caused likelihood of confusion as to source, sponsorship, approval, or certification by: (a) using Plaintiff's Round Hole Trade Dress in substantially the same size, and placed in substantially the same location on the knife blade; (b) using Plaintiff's marks in the tab titled "Spyderco Gallery" on the Gershblades.com; (c) displaying photos of composite products in the "Spyderco Gallery"

34

and on its social media and product forum account pages; (d) marketing "re-blade" services and "re-blade" products; (e) creating composite products bearing multiple manufacturers' marks in unauthorized combinations; and (f) otherwise conducting business in a manner likely to cause consumers to believe Defendant's goods are sponsored, approved, certified, or affiliated with Plaintiff.

148.   This violates Colo. Rev. Stat. § 6-1-105(1)(b).

149.   Upon information and belief, Defendant's violations are knowing and willful.

150.   Plaintiff has standing under § 6-1-113 and has suffered actual damages.

151.   Plaintiff is entitled to injunctive relief under § 6-1-110, actual damages, treble damages under § 6-1-113, costs, and attorneys' fees.

152.   Plaintiff requests judgment on the Tenth Claim and all relief in the Prayer for Relief.

### XIV.   ELEVENTH CLAIM FOR RELIEF
**Violation of Colorado Consumer Protection Act –
False Representation of Characteristics
(Colo. Rev. Stat. § 6-1-105(1)(e))**

153.   Plaintiff incorporates paragraphs 1-152 as though fully set forth herein.

154.   Since at least February 2023, Defendant has: (a) falsely represented all of the knives shown on the Gershblades.com website, Defendant's Etsy.com storefront and various social media and product forum account pages as "100% custom made" and made "from scratch" when they incorporate genuine OEM handles; and (b) falsely represented that it has sponsorship, approval, affiliation, or connection with Plaintiff through use of Plaintiff's trademarks in advertising, display of composite products, and marketing of "re-blade" services.

35

155.    This violates Colo. Rev. Stat. § 6-1-105(1)(e).

156.    Upon information and belief, Defendant's violations are knowing and willful.

157.    Plaintiff has standing under § 6-1-113 and has suffered actual damages.

158.    Plaintiff is entitled to injunctive relief under § 6-1-110, actual damages, treble damages under § 6-1-113, costs, and attorneys' fees.

159.    Plaintiff requests judgment on the Eleventh Claim and all relief in the Prayer for Relief.

### XV.    TWELFTH CLAIM FOR RELIEF
**Violation of Colorado Consumer Protection Act –
False Representation of Newness/Origin
(Colo. Rev. Stat. § 6-1-105(1)(g))**

160.    Plaintiff incorporates paragraphs 1-159 as though fully set forth herein.

161.    Since at least February 2023, Defendant has represented that all of the knives it provides are "100% custom made" and made "from scratch" when in fact, some of them are altered or composite products consisting of Defendant's blades combined with handles manufactured by Plaintiff and other OEMs.

162.    Defendant's composite knives are not original products made "from scratch" because they consist of components manufactured by different entities. Defendant's composite knives incorporating genuine Plaintiff handles are altered products because Defendant has removed Plaintiff's genuine blades and replaced them with Defendant's blades.

163.    This violates Colo. Rev. Stat. § 6-1-105(1)(g).

164.    Upon information and belief, Defendant's violations are knowing and willful.

165.    Plaintiff has standing under § 6-1-113 and has suffered actual damages.

166. Plaintiff is entitled to injunctive relief under § 6-1-110, actual damages, treble damages under § 6-1-113, costs, and attorneys' fees.

167. Plaintiff requests judgment on the Twelfth Claim and all relief in the Prayer for Relief.

### XVI.   THIRTEENTH CLAIM FOR RELIEF
### Common Law Trademark Infringement
### (Colorado Common Law)

168. Plaintiff incorporates paragraphs 1-167 as though fully set forth herein.

169. Upon information and belief, since at least February 2023, Defendant has used marks identical to or confusingly similar to Plaintiff's marks in commerce without authorization in connection with manufacture, sale, and advertising of knife blades and custom knives.

170. This use has created and continues to create a likelihood of confusion as to source, origin, sponsorship, affiliation, or endorsement.

171. This constitutes common law trademark infringement under Colorado law.

172. Upon information and belief, Defendant's infringement is willful, deliberate, and in bad faith.

173. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

174. Plaintiff is entitled to injunctive relief, compensatory damages, punitive damages, costs, and attorneys' fees.

37

175.    Plaintiff requests judgment on the Thirteenth Claim and all relief in the Prayer for Relief.

## XVII.    FOURTEENTH CLAIM FOR RELIEF
### Common Law Unfair Competition
### (Colorado Common Law)

176.    Plaintiff incorporates paragraphs 1-175 as though fully set forth herein.

177.    Since at least February 2021, Defendant has engaged in unfair competition by: (a) copying Plaintiff's Round Hole Trade Dress and using it in substantially the same size and location on its knife blades; (b) using Plaintiff's word and design trademarks without authorization; (c) passing off Defendant's goods as Plaintiff's; (d) creating composite products falsely suggesting authorization by Plaintiff; (e) misappropriating Plaintiff's goodwill; (f) making false representations; and (g) creating marketplace confusion.

178.    This conduct gives Defendant an unfair advantage and violates accepted standards of business ethics.

179.    This constitutes common law unfair competition under Colorado law.

180.    Upon information and belief, Defendant's unfair competition is willful and deliberate.

181.    As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, including lost sales, lost profits, damage to reputation and goodwill, and irreparable injury.

182.    Plaintiff is entitled to injunctive relief, compensatory damages, punitive damages, restitution, costs, and attorneys' fees.

183.    Plaintiff requests judgment on the Fourteenth Claim and all relief in the Prayer for Relief.

### XVIII.  FIFTEENTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(Colorado Common Law - Equitable Claim)**

184.    Plaintiff incorporates paragraphs 1-183 as though fully set forth herein.

185.    Upon information and belief, since at least February 2023, Defendant has been unjustly enriched by unauthorized use of Plaintiff's trade dress and trademarks through: (a) copying Plaintiff's Round Hole Trade Dress using it in substantially the same size and location on its knife blades; (b) using Plaintiff's trademarks and showing Plaintiff's trade dress in advertising; (c) trading on Plaintiff's goodwill; and (d) profiting from sales of products that incorporate or reference Plaintiff's distinctive trade dress and trademarks.

186.    Defendant has received and retained benefits under circumstances where retention would be unjust because: (a) Defendant has no authorization; (b) Defendant knowingly appropriated Plaintiff's trademarks and trade dress; (c) Plaintiff invested substantial resources developing its trademarks and trade dress; (d) Defendant's conduct harms Plaintiff; and (e) retention would reward unlawful conduct.

187.    As a direct and proximate result, Plaintiff has suffered damages, and Defendant has been enriched at Plaintiff's expense.

188.    Plaintiff is entitled to restitution, disgorgement of Defendant's profits, and other equitable relief.

189.    Plaintiff requests judgment on the Fifteenth Claim and all relief in the Prayer for Relief.

## XIX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter an Order for Judgment as follows:

A.    A preliminary and permanent injunction pursuant to 15 U.S.C. § 1116 and Colo. Rev. Stat. § 6-1-110 enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendant, from:

1.    Manufacturing, using, displaying, advertising, promoting, offering for sale, selling, or distributing any knife blades, knives, or related products bearing Plaintiff's federally registered Round Hole Trade Dress in substantially the same size and location on its knife blades or any colorable imitation thereof;

2.    Using Plaintiff's federally registered SPYDERCO Word and Design marks or any colorable imitation thereof in any manner, including but not limited to in website tab title, gallery titles, other e-commerce websites such as Etsy.com in advertising, promotional materials, or product descriptions including on various social media and product forum account pages;

3.    Assembling, creating, offering for sale, or selling composite custom knives that combine knife blades with genuine knife handles manufactured by Plaintiff or other OEMs in unauthorized combinations;

4.    Offering or providing "re-blade" services or similar services that result in the creation of composite products infringing Plaintiff's trademark rights;

5.      Representing that Defendant's products are "100% custom made" or making any other false or misleading representations about the nature, origin, or characteristics of Defendant's products;

6.      Engaging in any acts of trademark infringement, trade dress infringement, false designation of origin, false advertising, reverse passing off, or unfair competition with respect to Plaintiff's trademarks and trade dress;

7.      Otherwise infringing or violating Plaintiff's trademark rights and trade dress rights; and

8.      Assisting, aiding, or abetting any other person or entity in engaging in any of the foregoing activities.

B.      Defendant's profits derived from its infringing and unlawful conduct, pursuant to 15 U.S.C. § 1117;

C.      Plaintiff's actual damages suffered as a result of Defendant's infringing and unlawful conduct, pursuant to 15 U.S.C. § 1117;

D.      Enhanced damages up to three times the amount of actual damages for Defendant's willful trademark infringement, trade dress infringement, and related violations, pursuant to 15 U.S.C. § 1117(a);

E.      Treble damages for Defendant's knowing and willful violations of the Colorado Consumer Protection Act, pursuant to Colo. Rev. Stat. § 6-1-113;

F.      Punitive damages for Defendant's willful, malicious, and fraudulent conduct under Colorado common law;

G.      Restitution and disgorgement of all benefits Defendant has received from its unjust enrichment;

H.      Pre-judgment and post-judgment interest at the maximum rate permitted by law;

I.      Costs of this action, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a), Colo. Rev. Stat. § 6-1-113, and applicable common law;

J.      An order requiring Defendant to deliver up for destruction all knife blades, knives, composite products, promotional materials, packaging, labels, signs, advertisements, and any other materials in Defendant's possession, custody, or control that bear Plaintiff's trademarks, trade dress, or any colorable imitation thereof;

K.      An order requiring Defendant to file with the Court and serve upon Plaintiff within thirty (30) days after entry of final judgment a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the Court's injunction;

L.      Such other and further relief as this Court deems just and proper.

## XX.    JURY DEMAND

Spyderco hereby demands a jury trial on issues so triable.

Dated:  January 15, 2026                    Respectfully submitted,


By: /s/ Tristan D. Lewis
    Robert R. Brunelli
      rbrunelli@sheridanross.com
    Tristan D. Lewis
      tlewis@sheridanross.com
    Sarah J. Schneider
      sschneider@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202
    Telephone: (303) 863-9700
    Facsimile:  (303) 863-0223
    Email: litigation@sheridanross.com

*Attorneys for Plaintiff Spyderco, Inc.*